JUNE.     BEND *vs.* THE SUSQUEHANNA BRIDGE and BANK COMPANY.

Where the execution of a power of attorney was stated to be by "*J. H. P*, by my attorney *S. C*," transferring to *W.* *B* certain shares of stock, and signed and sealed by *S C* and under written "Atty. for *W B*"—Held, that it was executed so as to transfer the stock to *W B*

If the *habendum* in a deed of bargain and sale is to the *grantor*, it shall be rejected, and the use enure to the grantee

In a charter creating a corporation, subscriptions were authorised for raising the capital stock, to be paid by instalments, and when a certain amount was subscribed, the proprietors of shares, either as subscribers or assignees of such subscribers, were erected a body politic. *H. P.* who was a subscriber, assigned his stock to *W B* before the whole of the instalments were paid.—Held, that there was such a privity between the corporation and *W B* as enabled them to sustain an action of *assumpsit* against him for the amount of the instalments which had not been paid

Parol evidence is not admissible to prove that an assignment of stock was intended as a mortgage, when upon its face it purported to be an absolute assignment

APPEAL from *Baltimore* county court. *Assumpsit* by the appellees, (the plaintiffs in the court below,) against the appellant, (the defendant in that court,) to recover the

1823.

Bend
vs
Susquehanna
Bridge, &c

amount of three instalments of $5 each on 100 shares of stock in the company of the plaintiffs, alleged by them to belong to the defendant. The general issue was pleaded. At the trial below, the plaintiffs read in evidence the acts of assembly of 1808, *ch.* 111; 1812, *ch.* 143; 1814, *ch.* 66, and 1817, *ch.* 153. They then proved that more than two thousand shares of stock were subscribed, and that the company went regularly into operation; and that one *Moses Poor* subscribed in his own name for one hundred shares; that the president and directors for the time being, made calls in pursuance of the provisions of said acts of assembly for three instalments of five dollars on each share, which calls were complied with by *Poor;* that afterwards, on the 21st of September, in the year 1816, *Poor,* by power of attorney, duly constituted *Samuel Clendenen* his attorney, to transfer the said one hundred shares of stock to one *John H. Poor;* and that *Clendenen* did, on the 3d of October, 1816, in pursuance of said power, duly transfer the said stock to *J. H. Poor,* on the books of said bank, according to law; that afterwards, on the 30th November 1816, *J. H. Poor,* by power of attorney, authorised *Clendenen,* as his attorney, to transfer the said one hundred shares of stock to the defendant, with the consent of the defendant; and that on the tenth day of December 1816, *Clendenen,* in pursuance of said last power, executed the following assignment of said stock on the books of said bank.

"I, *John H. Poor,* by my attorney, *Samuel Clendenen,* do hereby transfer and make over unto *William B. Bend,* one hundred shares of stock held by me in the Susquehanna Bridge and Bank Company, *Maryland,* on which thirty per cent. has been paid, subject to the payment of the remaining seventy per cent. agreeably to the charter of incorporation.

Witness the hand and seal of *Samuel Clendenen,* (Seal.) this 10th Dec. 1816." Att'y. for *Wm. B. Bend.*"

This assignment was accepted by the defendant. Afterwards, the president and directors of the company, for the time being, duly called for the three following instalments on said stock, of five dollars on each share, payable as follows, viz. on the 1st of October, 1818; on the 31st of December, in the same year, and on the 1st of April, 1819; and that due notice was given of these calls, by

publication in the newspapers, according to the provisions of the acts of assembly aforesaid. The defendant then offered evidence to show that the said stock was transferred by *John H. Poor* to him, by way of mortgage, to secure a debt antecedently due by the said *Poor* to him; to the admission of this proof, the plaintiffs objected, and the court sustained the objection. The defendant then, prayed the court to direct the jury, that the plaintiffs were not entitled to recover, which direction the court, [*Ward* A. J.] refused to give. The defendant excepted, and appealed to this court.

The cause was argued before Buchanan, Earle, and Stephen, J.

*R. Johnson*, for the Appellant, contended, 1. That there was no privity between the plaintiffs and the defendant to support the action of *indebitatus assumpsit.*

2. That the assignment to the defendant by *Clendenen,* as attorney for *J. H. Poor*, was not properly made.

3. That the evidence offered by the defendant ought to have been received.

On the *first point* he referred to *Allstan's adm'r. vs: Contee's Ex'r.* in this court, at June term 1818. 6 *Bac. Ab.* 383, 384. 2 *Mod.* 57. The act of 1817, ch. 153, s. 6. *Spencer's* case; 5 *Coke*, 17, (3d Resol.) 1 *Esp. Dig.* 105; (202,) 106; (203.)

On the *second point*, to *Harper vs: Hampton,* 1 *Harr. & Johns.* 708. *Frontin vs. Small,* 1 *Stra.* 705. 2 *Ld. Raym.* 1418. *Comb's* case, 9 *Coke*, 76. *Smith's Lessee vs. Perry,* 1 *Harr. & Johns.* 706, (note;) and *White vs. Cuyler,* 6 *T. R.* 176.

On the *third point*, to 2 *Com. Dig.* 530. *Pawling vs. The United States,* 4 *Cranch,* 219. *Shermer vs. Beale,* 1 *Wash.* 15. *Champlin vs. Butler,* 18. *Johns. Rep.* 169. *Straton vs. Rastall,* 2 *T. R.* 366. *Harris vs. Johnston,* 3 *Cranch,* 311. The *Maryland Insurance Company vs. Reeden,* 6 *Cranch,* 338. *Norwood vs. Norwood,* in this court at December term 1807; *The Marine Bank vs. Byus,* in this court at June term 1818. *Eaton vs. Jacques,* 2 *Doug.* 455. *White vs. Cuyler,* 6 *T. R.* 176.

*Murray*, for the Appellees, on the *first point* referred to the acts of 1812, ch. 143, s. 4; 1814, ch. 66, s. 4, 17; and

1817, ch. 153. *The Huddersfield Canal Company vs. Buck-ley*, 7 *T. R.* 36.

On the *second point*, to *Howell vs. M'Ivers*, 4 *T. R.* 690. *Comb's* case, 9 *Coke*, 76. *Wilks vs. Back*, 2 *East*, 142. 1 *Phill. Evid.* 416. *Shep. Touch.* 59. *Lightfoot vs. Te-nant*, 1 *Bos. & Pull.* 557.

On the *third point*, to *Lucas vs. Comerford*, 1 *Ves. jr.* 235. *Williams vs. Bosanquit*, 1 *Brod. & Bring.* 262. 2 *Bac. Ab. tit. Covenant*, (E 3,) 72.

The opinion of the court was delivered by.

BUCHANAN, J. The action was brought to recover the amount of three instalments, of five dollars each, on one hundred shares of stock in the *Susquehanna Bridge and Bank Company*, alleged by the plaintiffs to belong to the defendant. *Moses Poor* subscribed in his own name for the stock in question, and afterwards duly appointed *Sa-muel Clendenen* his attorney, to transfer it to *John H. Poor*; in pursuance of which power, *Samuel Clendenen* did, on the 3d of October in the year 1816, transfer the said stock, on the bank, to *John H. Poor*, according to the pro-visions of the charter. On the 30th of November 1816, *John H. Poor* regularly constituted *Samuel Clendenen* his attorney, to transfer the said one hundred shares of stock to the defendant, with his knowledge and consent; and on the 10th of December 1816, *Samuel Clendenen* made an assignment of the stock, on the books of the bank, to the defendant, in these words: "I *John H. Poor*, by my attor-ney, *Samuel Clendenen*, do hereby transfer and make over unto *William B. Bend*, one hundred shares of stock held by me in the *Susquehanna Bridge and Bank Company*, *Maryland*, on which thirty *per cent.* has been paid, subject to the payment of the remaining seventy *per cent.* agreea-bly to the charter of incorporation;"—which is signed and sealed by *Samuel Clendenen*, and underwritten "Att'y. for *Wm. B. Bend.*" The charter authorises the transfer of stock at the bank by any holder, either in person or by at-torney; and the first question raised in the discussion of the cause, is, whether the power given by *John H. Poor* to *Samuel Clendenen*, was so executed as to transfer the stock in question to the defendant? Of which we have no doubt. It is very certain, that in point of law the act done under a power of attorney, must be the act of the principal, and

not of the attorney, otherwise it cannot have the effect to bind the principal, and here the act done, that is, the assignment and transfer of the stock, is emphatically the act of *John H. Poor.* It expressly purports, upon the face of it, to be a transfer of *John H. Poor,* by his attorney, *Samuel Clendenen,* and being so expressed in the body of the instrument, it was sufficient for *Clendenen* to sign and seal it, without any addition of the character in which he acted, that character being before distinctly set out; and as the assignment is clearly expressed, and manifestly appears to be the act of the principal, *John H. Poor,* through the agency of his attorney, *Samuel Clendenen,* the superaddition of the words, "Att'y. for *Wm. B. Bend,*" cannot have the effect to defeat it; but being repugnant to the whole context, must be rejected, on the same principle, that where the *habendum* in a deed of bargain and sale is to the grantor, it shall be rejected, and the use enure to the grantee; or it may be, that *Samuel Clendenen* was as well the agent in that transaction of *William B. Bend,* as attorney for *John H. Poor,* and that he placed the words "Att'y. for *Wm. B. Bend,*" under his signature, to denote that agency. That he could not have been the attorney of *Bend,* for the purpose of *making* the transfer, is most manifest, he being the party receiving, and not the party making the assignment; and it is not easy to suppose that *Clendenen,* in adding the words "Att'y. for *Wm. B. Bend,*" intended to deny his agency for *John H. Poor,* which he had before so distinctly affirmed. It was, therefore, either an act of mere inadvertency, or it was done to show the double "capacity in which he may have acted; and in neither case does it vitiate the assignment, but is wholly inoperative. It is enough that the transfer was made in the name of *John H. Poor,* and that it sufficiently appears to be his act, through the agency of his attorney, for which no particular form of words is required to be used.

As to the question, whether there is such a privity between the plaintiffs and the defendant, as to enable the plaintiffs to sustain an action of *assumpsit* against the defendant for the amount of the instalments, which form the subject of the suit, there can be no doubt. The transfer of stock by the holders, is authorised by the charter; and by the assignment, the assignees are substituted in the places of the original subscribers, and hold the shares

on the same conditions, and are subject to the same rules and orders. The calls for the instalments in question were made by the plaintiffs in pursuance of the provisions of the charter, and after the transfer by *John H. Poor* to the defendant; and the charter authorising transfers of stock, and declaring all "who may become the actual proprietors of shares in the capital stock, either as subscribers for the same, or as the legal representatives, successors, or assignees of such subscribers," to be a body politic and corporate, necessarily creates a privity, and raises an *assumpsit* on the part of such as choose to become stockholders, by accepting transfers to pay all such calls as may be regularly made, on which an action will properly lie. Moreover, by the very terms of the assignment, the defendant took the stock, subject to the payment of the whole amount that was then unpaid; and it is no objection to say, that such a construction of the charter would be injurious to the bank, on the ground that it would thereby lose its remedy against the original stockholders, seeing that the charter has provided an abundant security against loss, by creating adequate forfeitures for nonpayment of the instalments called for, and prohibiting any transfers by stockholders indebted to the bank, until such debts shall be paid. In support of the position, that the defendant is answerable in an action of *assumpsit* for the amount of the calls made, since he received a transfer of the stock, if indeed such a position needs any support, see the case of *The Huddersfield Canal Company vs. Buckley, 7 Term Rep.* 36, which is directly in point.

At the trial of the case below, the defendant offered evidence to prove, that the assignment of the stock in question was not intended as as absolute transfer, but as a mortgage to secure a debt due to him from *John H. Poor,* which was rejected by the court; and it is urged here in argument, that the testimony ought to have been admitted; which presents the constantly returning question, whether parol evidence is admissible to contradict a written instrument? Assuming different shapes, and varying with the various transactions between man and man, and each claiming to be an exception from the general rule, "that parol evidence cannot be admitted to contradict, add to, or vary the terms of a will, deed, or other written instrument." It is not necessary to inquire, how far the liability of the

defendant to an action of assumpsit for the amount of the instalments claimed in this suit, would be affected by the fact, if true, that he holds the stock only as a mortgagor, if the evidence offered to establish that fact was properly rejected; and we think that it was clearly inadmissible, being offered by an immediate party to a sealed instrument, to contradict and change the terms of it, for the purpose of defeating rights claimed, and growing out of that very instrument alone, with nothing to take it out of the operation of the general rule of evidence, but in direct violation of it.

JUDGMENT AFFIRMED.