THE BANK OF WESTMINSTER
vs.
WILLIAM PINKNEY WHYTE, PERMANENT
TRUSTEE OF GEORGE SUTER.

WILLIAM PINKNEY WHYTE, PERMANENT
TRUSTEE OF GEORGE SUTER
vs.
JOHN FISHER ET AL.

MARCH TERM, 1850.

[ABSOLUTE CONVEYANCE DECLARED A MORTGAGE—INSOLVENT SYSTEM.]

No matter how absolute a conveyance may be on its face, if the intention is to take a security for a subsisting debt, or for money lent, the transaction will be regarded as a mortgage, and treated as such.

Though the defeasance was by an agreement resting in parol, still as between the parties, the deed, though absolute on its face, will be considered a mortgage.

Parol evidence is admissible to show that an absolute conveyance was intended as a mortgage, and that the defeasance was omitted or destroyed by fraud or mistake.

But unless accident, fraud, or mistake can be shown, or in cases of trusts, parol evidence cannot either at law or in equity be admitted to contradict, add to, or vary the terms of a will, deed, or other instrument.

In this case, the answer of the grantee confessing and admitting that a security merely was intended to be taken for a subsisting debt, the conveyance, though absolute on its face, was declared to be a mortgage.

It is the right and duty of the trustee in insolvency to sell the property of the applicant encumbered by mortgages, and pay off the liens and incumbrances thereon.

Where the insolvent has made an absolute transfer of property in the nature of a trust to secure the payment of the money due by him to the grantee, such property must be administered by his trustee in insolvency.

The design of the insolvent laws was to secure a prompt, single, and harmonious administration of the estate of the insolvent, which could only be effected by bringing all the parties interested before one and the same tribunal.

[William Pinkney Whyte, as permanent trustee of George Suter, an insolvent debtor, who applied for the benefit of the insolvent laws on the 13th of March, 1846, filed his bill on the 10th of May, 1847, to set aside a certain judgment confessed

by said Suter to the Bank of Westminster, on the 26th of November, 1845, for $9250, as a fraud upon the insolvent system. This bill specially interrogates Fisher, the cashier of the Bank, whether $3,000, part of said judgment, was not lent upon the security of three stalls in different markets in the City of Baltimore, owned at the date thereof by said Suter. Fisher in answer to this bill, states, that in November, 1845, Suter was indebted to the Bank in the sum of $6,000, then due and unpaid, on various notes drawn and endorsed by him; and on the 26th of that month, said Bank having on that day advanced him $3,000, he confessed a judgment to the Bank for $9,000, and executed a bill of sale or transfer of his licenses for the market-stalls mentioned in the bill; that said sum of $3,000 was not lent specifically upon the security of these stalls, but on the joint security of said stalls and other property, which at the time was believed by respondent to be bound by said judgment, the object of the Bank and of Suter being, as understood by respondent, to secure not only the money then advanced, but the debt previously due said Bank. That upon the judgment so confessed, executions were issued and the property sold; and since said sale, David Stewart, Esq., claims to be the owner of the personal property so sold, under a deed executed by Suter on the 29th of January, 1846, conveying to him all his property, real, personal, and mixed, in trust for the payment of the grantor's debts, &c.; and said Stewart has instituted suit against the sheriff, who had been indemnified by the Bank to recover the same, which suit is now pending. (The deed to Stewart and the suit here referred to, will be found reported in the noted case of *Kettlewell* vs. *Stewart*, 9 *Gill*, 472.)

Afterwards, on the 14th of July, 1847, the Bank filed its bill for an injunction restraining the trustee in insolvency from selling the stalls assigned to its cashier Fisher, as above stated. This bill claims that this assignment was *bona fide* made, and not in contemplation of insolvency; and that thereby the Bank became invested with a full title to said stalls, encumbered only with a trust that the proceeds thereof, when

sold, should be applied as a credit upon the judgment aforesaid, in part payment of which it was received. The injunction was granted as prayed. Whyte, the insolvent trustee, in his answer to this bill, admits that the Bank became nominally invested with a full title to said stalls; but in equity and good conscience, was entitled to the same only as a security, by way of mortgage for the debt due by Suter to the Bank, of $3,000; and that the same passed to said Fisher as the agent of the Bank, encumbered with the trust that the debt or loan aforesaid of $3,000 should be secured thereby, and that all beyond that debt should enure to the benefit of Suter and his assigns; and that respondent, as his permanent trustee, has the right to administer the same in insolvency.

Afterwards, on the 21st of October, 1848, Whyte filed his bill for an injunction restraining Fisher and his agents, or assigns, from interfering in any way with said stalls or the possession thereof.

This injunction was granted, and the two causes were argued together,' upon motions to dissolve the injunctions granted in each.]

THE CHANCELLOR:

These cases have been argued together, and are so connected, as, in the view of the counsel and the Court, to constitute but one suit.

The pecuniary interest involved is inconsiderable, but the questions which the cases present, are not unimportant. The general rule is too firmly established to be questioned, that no matter how absolute a conveyance may be on its face, if the intention is to take a security for a subsisting debt, or for money lent, the transaction will be regarded as a mortgage, and will be treated as such. *Hicks* vs. *Hicks*, 5 *Gill. & Johns.*, 75; *Dougherty* vs. *McColgan*, 6 *ibid*, 275. And though the defeasance was by an agreement resting in parol, still as between the parties, the deed, though absolute on its face, will be considered a mortgage, for parol evidence is admissible to show that an absolute conveyance was intended as a mortgage,

and the defeasance was omitted or destroyed by fraud or mistake. 2 *Kent's Com.*, 142, 143; *Henderson* vs. *Mayhew et al.*, 2 *Gill*, 393. But it is likewise undeniably true, that unless accident, fraud, or mistake can be shown, or in case of trusts, parol evidence cannot, either at law or in equity, " be admitted, to contradict, add to, or vary the terms of a will, deed, or other instrument." *Bend* vs. *The Susquehanna Bridge Co.*, 6 *H. & J.*, 128; *Watkins* vs. *Stockett, ibid*, 435.

In this case, the transfer of the three stalls is absolute and unconditional, and if there was nothing in the answer of Mr. Fisher, to whom the transfers were made, and who acted as the agent of the Bank, in the negotiation with Suter, from which it could be fairly inferred that the object was to take a security for money loaned, or to be loaned, it would fall within the general rule, and the transfer could not be qualified by the introduction of parol evidence, neither fraud nor mistake being alleged. But looking to the pleadings in the case, and especially to the answer of Fisher to the bill filed by Whyte, as the permanent trustee of Suter, to set aside the transfer as fraudulent, in view of the insolvent laws, which answer is invoked in these causes, and has been read without objection; and there can, I think be no doubt that the transfer of the stalls was taken as security for the repayment of money due the Bank, and not absolutely by way of purchase. The language of the answer is, " That the said sum of $3,000 was not *lent* specifically upon the security of the three stalls in different markets in the City of Baltimore, but on the joint security of said stalls, and other property of said Suter, which, at the time, was believed by this respondent to be bound by said judgment, the object of the Bank and Suter being, as understood by this respondent, *to secure* not only the money then advanced, but the debt previously due the Bank."

It therefore clearly appears, that the transfer of the stalls was taken as security for a debt, and whether to secure the specific sum of $3,000 loaned Suter at that time, or the entire debt of $9,000, for which the judgment was confessed, still the intention of the parties was surely to give and to take a security for a debt, and consequently the transaction must be

treated accordingly, that is, the transfer must be regarded as a mortgage or pledge to secure the payment of a debt, and not as passing the absolute title to the creditor.

The position that this was the intention of the parties, derives powerful support from the fact that the sum of $3,000 advanced at the time of the transfer, was included in the judgment confessed by Suter. Indeed, I do not understand it to be contended by the counsel of the Bank, that these three stalls were purchased by it for the sum of $3,000, because, if so, no conceivable reason could be assigned for including that sum in the judgment. His argument is, that the transfer was absolute, and that the Bank was to be at liberty to sell, and apply the proceeds of the sales to the extinguishment, so far as they would go, of the entire debt of $9,000, for which the judgment was rendered. If that was the character of the transaction, that is, if the stalls in the hands of the Bank, or its agent, Mr. Fisher, were affected with a trust to sell and apply the proceeds to the payment of the debt, still I should think that in the eye of a Court of Equity, the transfer would be regarded as a mortgage, being a mere security for the debt, and not an indefeasible transfer of the title. My opinion then, is, that this transfer of these stalls, though absolute in terms, must be treated as a security merely, and be subject to the consideration governing such transactions. And this conclusion is arrived at, without trenching upon the principle that parol evidence in the absence of fraud or mistake, is inadmissible to vary or contradict the clear import of a written instrument ; but upon the confessions and statements of the answers themselves, which, in my opinion, prove clearly that a security merely was intended to be taken, and if so, it follows that however absolute the form of the instrument, it will be dealt with as a mortgage.

The remaining question has reference to the right of the insolvent trustee of Suter ·to sell this property, and administer the proceeds of the sale ·under the control of the Court, by which he was appointed. And this depends upon the true construction of the 5th and 7th sections of the Act of 1805, ch. 110. It is conceded, and indeed could not be disputed,

since the decision of the case of *Alexander* vs. *Ghiselin et al.*, 5 *Gill*, 138, that if the transfer of this property is to be regarded as a mortgage or a pledge for the security of a debt, that it would be the right and the duty of the insolvent trustee to sell it, and pay off the liens and incumbrances thereon, the opinion of the Court of Appeals in that case being explicit to that effect. But it is urged that the transfer here, though made to secure a debt, is in the nature of a trust, and that the insolvent trustee has no authority to interfere with the trustee selected by the convention of the parties, whose right it is to proceed in the discharge of his duty, undisturbed by any such interference. It appears to me, however, that assuming this transaction to be such as the counsel for the Bank has characterized it, that is, that the property in question, though transferred to Mr. Fisher absolutely, was nevertheless affected with, and to be regarded as subject to a trust, for the payment of the money due from Suter to the Bank, and that parol evidence is admissible for the purpose of showing the trust, still it seems clearly to come within the scope of the principles settled by the Appellate Court, in the case referred to. Looking to the design of the insolvent laws, as expounded in that case, which was to secure a prompt, single, and harmonious administration of the estate of the insolvent, which could only be effected by bringing all the parties interested before one and the same tribunal, it would seem to be essential that no one should be permitted to participate with the insolvent trustee, in the execution of the trust by which, as observed by the Court in that case, "adverse interests might be created, delays endangered, if not ensured, and probably different, and possibly conflicting tribunals consulted."

Considering that this question is in effect settled by the case in which these remarks were made, I shall pass an order dissolving the injunction issued upon the bill of the Bank of Westminster, and continuing that which issued upon the bill of the insolvent trustee.

———

JOHN NELSON, for the Bank.

DAVID STEWART, for the Trustee in Insolvency.