By the Court.
Hoffman, J.
The plaintiffs and defendants are Money, and Exchange Brokers in New York. The defendants, on the 3d of July, 1852, sold and delivered to the plaintiffs a paper purporting to be a true and genuine Bill of Exchange, drawn by the Guernsey Commercial Banking Company, and purporting to bear the signature of M. De Agnew, as manager of said company, and drawn upon Messrs. De Lisle, Janvrin and De Lisle, in London. The bill was payable to the order of one Peter Simmons for £450. The plaintiffs, in the belief that the bill was genuine, paid the sum of $2,282.44 for it, being its value in American currency. They allege that it was ascertained to be a forgery, and now claim repayment of the money.
The defendants, after a general denial that the plaintiffs received such bill from them in the course of their mercantile business, as Money and Exchange Brokers, or otherwise, deny that the document was false, forged or counterfeited.
At the trial, the jury found a verdict for the plaintiffs under the charge of the Judge, and found specially as to two questions put to them by the court.
The Judge wás requested to charge in a particular , manner as to one point in the cause, and refused; and for this refusal, as well as for the charge actually made upon that point, an exception was taken.
Another exception was taken to the ruling of the Judge, in *82 permitting certain testimony, as to the alleged forgery, to go to tlie jnry.
I. The first point arises in this way: some evidence was adduced as to the defendants representing, at the time of the sale, that they were acting as agents. ■ The Judge charged that if the jury found the draft a forgery, the defendants were liable, although they acted as agents and disclosed the fact, unless they also disclosed their principal; but it was for the jury to say, whether they disclosed that they acted as agents.
The defendants’ counsel asked the court to charge that the defendants were not bound to name their principal, unless the plaintiffs inquired for or about him. That it was enough they gaye notice that they acted a$ agents, and would not endorse, unless on inquiry they refused to disclose their principal. The Judge declined so .to charge, and the defendants excepted. The question was specifically submitted, whether, when the bill was sold, the fact was disclosed to the plaintiffs, that the defendants were acting as agents of Simmons the payee, and the answer of the jury was, that it was not disclosed.
Had the question been whether it was disclosed that they were acting as agents generally, and the answer had been the same, the error in the charge of the Judge, if any, would have been remedied.
The bill was endorsed specially by Peter Simmons to-E. Morrison, or.order. Ho other party appears on the bill.
The English cases are collected in Paley on Agency, 869 ; in Smith’s Mercantile Law, 66, 78, 79; and in Story on Agency, 266, &c. Ho rule of law is better established than this, that when an agent names his principal, the principal is responsible, and not the agent. This is the language of Lord Erskine in ex parte Hartop, (12 Vesey, 852,) and he adds, “But for the application of that rule, the agent must name his principal, as the person to be responsible.”
And in Owen v. Gouch, (2 Espin. 527,) Lord Kenyon said, “ If goods were ordered to be delivered on account of another, and after the delivery, the person who gave the order, refuses to inform the tradesman who the principal is, that he may sue him, he is himself liable. But wherever an order is given by one -person, and he informs the tradesman who that person is for whose *83 use the goods are ordered, he declares himself to he an agent, and is not responsible.”
It is also a well settled rule in England, that if the principal is a foreigner, the credit, by universal understanding, is considered as given to the British buyer, and not to the foreigner. But the present case does not sufficiently raise this question. The only apparent principal is Simmons, and it does not appear where he resides, although a presumption may exist that it is in Great Britain. Z
Hansom v. Roberdeen, (Peake’s N. P. Cases, 120,) was the case of an auctioneer known, of course, to sell in his representative capacity, who did not disclose the name of his principal. He was held personally liable. The case of Jones v. Littledale, (6 Adol and Ellis, 486,) agrees with this, the auctioneer havirfg made himself liable by the form of the contract.
In Thompson v. Davenport, (9 B. & Cress. 78,) the court held, that where a person sells goods, supposing at the time that he is dealing with a principal, but afterwards discovers that the person is not a principal but a mere agent, he may recover the amount from 'the principal, unless the state .of the account between the principal and agent has been altered to the prejudice of the former. But Lord Tenterden says, “ If, at the time of the sale, the seller knows, not only that the person who is nominally dealing with him is not principal but agent, hut also knows who the principal really is, and yet makes the agent his debtor, dealing with him, and him alone, then the seller -cannot charge the principal.” He cites Addison v. Gaudesequi, 4 Taunton, 514, and Patterson v. Gaudesequi, 15 East. 62.
But the court proceed to state, that the case at bar was a middle case. The sellers, at the time of dealing for the goods, were informed that McKune, who came to buy them, was dealing for another, — that is, that he was agent; but they were not informed who the principal was. They had not at that time, therefore, the means of making their election. It is true they might have obtained these means, if they had made further inquiry, but they made no further inquiry. Not knowing who the principal really was, they had not the power at that instant of making their election. On this distinction, the court held, that the actual principals, when discovered, might be sued for the price of the goods. *84 Justice Bayley puts the case very clearly. “ Iu the present case, the seller knew that there was a principal; hut there is no authority to show, that mere knowledge that there is a principal destroys the right of the seller to look to that principal as soon as he knows who he is, provided he did not know who he was at the time of the purchase. It is said that the seller ought to have asked the name of the principal, and charged him with the price of the goods. By omitting to do so, he might have lost his right to claim payment from the principal, had the latter paid the agent, or had the state of the accounts between the principal and the agent been such as to make it unjust that the former should be called upon to make the payment. The justice of the case is, that the seller shall be paid, and that the principal shall be the person to pay him, provided he has not paid any one else.”
It is apparent that much stress was laid upon the justice of the case, that the defendant or the principal had got the goods, and had not paid for them to the sellers, the plaintiffs, or to the agent, or any one else. Had they paid the agent, or settled the amount in account, the result would have been different. So here, had the defendants paid over the sum received to their employer, or settled an account including it, the defence would be sufficient, and the case of Thompson v. Davenport would apply.
In the leading case of Mauri v. Heffernan in our own courts, (13 John. Rep. 58,) the Judge at the trial had instructed the jury, that if a party would excuse himself from responsibility on the ground that he acted in the capacity of agent, he ought to show that he communicated to the other party his situation as agent, and that he acted in tbit capacity, so as to give a remedy over against the person whom he represented as his principal; and the Supreme Court held this to be unquestionably correct. This appears to involve the necessity of a disclosure of the name.
Rathbone v. Bedlong, (15 John. Rep. 1,) decides, that an agent who discloses the name of his principal at the time of the contract, is not personally responsible.
In Waring v. Mason, (18 Wendell, 425,) commission merchants wire held personally liable, though generally known as such, because they did not disclose the name of the principal.
Comyns v. Macgrath, (4 McCord, 392,) and Henderson v. Mahew, (2 Gill, 393,) are cases to show that a vendor does not lose his *85 right of action against a principal, nnless at the time he knows who the principal is, and still makes the agent his debtor.
In Taintor v. Prendergast, (3 Hill, 72,) the contract was made with an agent residing in this state, of a principal residing in Connecticut. It was to recover a sum of money advanced on a contract to deliver wool, and not fulfilled. The action was sustained.
The court say: “It may be admitted, as was urged in the argument, that whether the principal be considered a foreigner or not, his agent omitting to disclose his name, would be personally liable to an action.”
In Raymond v. The Crown and Eagle Mills, (2 Metcalf, 319,) a vendor discovered subsequent to a sale, that the vendee was agent for another. It was held, that he might charge either, at his election, although at the time he relied solely upon the credit of the agent for payment. And the fact, that he had the means of knowing the principal at the time, was held not sufficient to prevent his resorting to the principal, unless he actually knew at the time who the principal was.
We are satisfied that the rule of law which governs this case is this: That where a person sells property, stating that he acts for another, but does not disclose the name of his principal, he makes himself responsible to the purchaser in any way in which the actual principal would be liable; but that he may exonerate himself from such liability by showing a payment over to his principal, or other special circumstances attending the transaction proving that it would be inequitable, as between the parties, to hold him responsible.
II. As to the other question in the cause as to the admissibility of the evidence as to the forgery, we are of opinion that there was no error in the ruling of the Judge. The grounds upon which he was required to suppress the examination of the witness De Patron, were plainly insufficient.' Whether the answers of the witness to any of the questions that were put to him were so evasive as to affect his credit, was a question for the consideration of the jury, but the objections which were relied on, were certainly not such as could have justified the court in the entire suppression of his testimony; and that they were deemed of slight importance by the jury was rendered evident by their verdict.
The judgment appealed from must be affirmed, with costs.