## Patrick Dougherty *vs.* Bernard McColgan.— *December,* 1834.

Where there was a loan of money, and a mortgage given on the 13th May, 1828, as a collateral security for the repayment of it; and on the 7th of November, 1828, an absolute deed for the same property was given by the borrower to the lender, who executed a bond for the reconveyance of the same property at the expiration of twelve months, upon the payment of the same sum of money for which the original mortgage was given as collateral security, a court of equity will determine from the facts and circumstances connected with the course of dealing between the parties, whether a conditional sale or mortgage was intended in fact by the parties.

A transaction constituting a mortgage cannot be converted into a sale; therefore the leaning of courts of equity in doubtful cases is against the lenders of money, and they hold such cases rather to be mortgages than conditional sales.

Whenever the intention is to take a security for a subsisting debt, or for money lent, and to avoid or restrict the equity of redemption, Chancery seeking to protect the debtor against the rapacity of the creditor, and to do full and equal justice between the parties, will defeat such intention, by treating the transaction as a mortgage.

A covenant to pay the debt or to repay the money lent, is not an indispensable ingredient in a mortgage. If a security for the money is intended, that security is a mortgage, though not bearing upon its face the form of a mortgage.

When the relation of mortgagor and mortgagee is once established, though the equity of redemption may be sold or disposed of to the mortgagee, yet unless the transaction appears to be fair, and unmixed with any advantage taken by the mortgagee of the necessitous circumstances of the mortgagor, equity will hold the parties to their original relation of debtor and creditor.

It is a general principle in Chancery, though not without exceptions, that a mortgagee in possession, is not to be allowed for new improvements erected upon the premises.

A mortgagee before foreclosure is not the substantial owner, nor under any obligation to make any repairs, but such as may be necessary.

Where the property mortgaged exceeded in value the sum lent, and where there was no proof that it had begun to fall into decay; where there was no proof the houses upon the premises were in a ruinous state, and that the mortgagee pulled them down and built new ones as substitutes; where there was no long continued possession, and acts of ownership by a mortgagee, and acquiescence by the mortgagor, with no claim of the right to redeem; where the mortgage was executed and the improvements commenced about three years after, and not finished when a bill to redeem was

filed, and where the mortgagor during the whole term kept up a continual claim of the right to redeem, and had no notice of the design to put up new improvements, IT WAS HELD, upon a bill to redeem, that the mortgagee could not claim to be paid for new buildings, which he had erected upon the mortgaged premises, but must surrender the property upon the payment of his debt and interest.

APPEAL from the court of Chancery.

The appellant on the 7th of March, 1832, filed his bill against the appellee, alleging that being indebted to the appellee in the sum of $500, for the purpose of securing the payment of the same, he conveyed to him on the 7th of November, 1828, by a deed absolute upon its face, certain leasehold property in the city of *Baltimore,* and at the same time, took from the appellee a bond conditioned for the re-conveyance of the property, upon the payment of the said sum of money, at the expiration of twelve months from the date thereof. That the appellee entered into, and has remained in possession of the property from the date of the deed, receiving to his own use the rents and profits, and notwithstanding the appellant has offered to repay him the $500, refuses to re-convey, agreeably to the condition of his bond, denying the appellant's right of redemption, and asserting an indefeasible title in himself. The prayer of the bill is, for an account and re-conveyance, upon the payment by the appellant of whatever sum may be found due from him to the appellee, and for general relief.

The answer admitted the execution of the deed, and defeasance, as charged in the bill, but alleged that after the expiration of the period limited for the payment of the money, which was originally loaned on the 13th of May, 1828, on mortgage of said property; the appellant not being able to pay the debt, the time for doing so was by agreement of parties extended for three months, with the understanding, and it was so agreed, that should the appellant fail in the payment at that time, the conveyance to the appellee, notwithstanding the defeasance, should become absolute. That the respondent remained in the undisturbed possession

of the premises, from the date of the deed to the time of filing the present bill, without any demand or claim being made upon him in any shape, and that he had at that period just erected and completed new improvements thereon, at an expense of $720, which, together with taxes, insurance, ground rent, &c. and the interest for three years on the $500, make an aggregate of $1458 78, which the said property has cost him, whilst the total of the rents received by him is but $217 74. And the respondent submits, that no decree in the premises should pass, without the re-payment, or securing to him the re-payment of the amount due, in the event of a sale for less than the sum so owing to him as aforesaid.

After the return of a commission, under which several witnesses were examined, the Chancellor (BLAND,) on the 9th of September, 1833, decreed, that the parties account with each other before the auditor, concerning the mortgage debt, the rents and profits, and the value of the permanent improvements; being of opinion that the complainant could only be permitted to redeem, upon paying for the lasting improvements made upon the property, under all the peculiar facts and circumstances of the case. From this decree the complainant prosecuted an appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, and CHAMBERS, J's.

*McMahon*, for the appellant.

When a deed and defeasance are executed on the same day, they constitute a mortgage, as does every transaction, no matter what shape it may assume, whose object is to secure the re-payment of money, or the re-imbursement of a pre-existing debt; and the question therefore is, shall a mortgagee, whose possession has not been of long duration, be allowed for new improvements, not essential to the beneficial enjoyment of the property, and whilst the mortgagor continued to assert his equity of redemption. 1 *Powel*, 4.

*(a, note 2.)    Ib.* 120, *(note* 1.)    A mortgagee cannot create an incumbrance on the property, binding the rights of the mortgagor, and every accessorial advantage is for the benefit of the mortgagor, except so far as it enhances the security of the mortgagee.    A mortgagee is not entitled to be re-imbursed for his personal attention.    1 *Powel on Mort.* 295, *(B.)*    Nor is he allowed for the expense of insurance.    5 *Pick.* 270.    1 *Hop. Ch. Rep.* 283.    Neither is he allowed for repairs to pre-existing buildings, unless such repairs are necessary.    4 *Ves.* 480.    1 *Powel,* 189, *(A,)* 196.    5 *Pick.* 270.    New buildings for new purposes cannot be made, nor expenses not necessary incurred.    1 *Johns. Ch. Rep.* 387.    2 *Pick.* 505.    12 *Ves.* 493.    3 *Pow.* 957, *(note A.)*    If by the decree of the court of Chancery, a mortgagor is let into possession of the premises before the time stipulated in the contract, then, in that case, the mortgagee will be allowed for improvements; because when made, he had a right to anticipate the enjoyment of the property, until the expiration of the stipulated period, and if he is deprived by decree of that advantage, it is but equitable that he should be reimbursed for his improvements. 1 *Vern.* 183.    7 *Con. Rep.* 377, 384.    2 *Sch. and Lef.* 661. 1 *Powel,* 374.

It may be contended that this is a conditional sale, and not a mortgage; but that question is not before this court. The decree of the Chancellor treated it as a mortgage, and the defendant has not appealed; and for the same reason, it cannot be objected, that the bill does not make a tender of the money.    That the transaction in its origin was a mortgage cannot be questioned; and an agreement formed at the time, or subsequently entered into, restraining the right of redemption would not be valid.    1 *Powel,* 124, *(A.)    Ib.* 120. *(note.)*    An equity of redemption it is true may be sold, but it must be for a valuable consideration, which was not the case in reference to the agreement here, relied on as an abandonment of the right to redeem.    5 *Gill and Johns.* 75.

*Frick*, for the appellee.

1. The agreement to extend the time of payment for three months, converted the mortgage into a conditional sale.

2. But if that was not the case, still under the circumstances of this case, the mortgagee should be allowed for the permanent improvements. The possession by the mortgagee was not taken under the mortgage of May, 1828, but under the deed of November following, and the improvements were not made until after the appellee supposed his title to be indefeasible. He supposed himself the actual owner of the property, and the error, if it was an error, was an honest one, for which he should not be made to suffer. 5 *Gill and Johns.* 75. Besides the mortgagor stood by, and saw those improvements made, and then to be allowed to redeem merely upon the payment of the original debt, when by a timely objection he could have saved the mortgagee the cost of the improvements, would be a fraud upon him which no court will tolerate. 5 *Harr. and Johns.* 147. 6 *Peters.* 716. 2 *Harr. and Gill.* 191.

The cases referred to on the other side, are cases of clear unequivocal mortgage, in which the right to redeem was indisputable. 1 *Johns. Ch. Rep.* 387. 3 *Powl.* 957, *(A.)* 5 *Harr. and Johns.* 312, 313. 1 *Wash. Rep.* 14. 1 *Vern.* 137. 7 *Cranch.* 240.

3. But at all events the mortgagor was bound to have tendered the money, and the tender should have been contained in the bill. 6 *Harr. and Johns.* 100, 134.

BUCHANAN, Ch. J., delivered the opinion of the court.

The complainant in his bill treats the deed to the defendant as a mortgage, and seeks to redeem the premises on payment of such sum as may be justly due thereon, which is denied by the decree of the Chancellor, except on his paying also for the permanent improvements, erected upon the property by the defendant.

It appears that originally, on the 13th of May, 1828, the

defendant lent, or advanced to the complainant, five hundred dollars, and on the same day took from him a mortgage of the premises, as a collateral security for the payment of the sum advanced; and that afterwards the complainant being unable to pay the money, agreed to execute an absolute deed to the defendant, for the same property, in consideration that he would extend the time of payment, and give him a bond for the re-conveyance of it, on payment of the amount at the expiration of twelve months from the date; both of which instruments, the absolute deed, and the bond to re-convey were accordingly executed on the same day, the 7th of November, 1828.

The case is brought up by appeal from the Chancellor's decree, and the questions raised in argument are;

1st. Whether this is a case of *mortgage,* or a *conditional* sale.

2d. If it is to be considered as a mortgage, whether the defendant should be allowed for the permanent improvements put up by him upon the premises.

As to the first question, whether it is a case of mortgage, or conditional sale; it may here be remarked, that it is treated in the decree, as a case of mortgage, which decree has not been appealed from, but acquiesced in by the defendant, and we can perceive nothing to be objected to in that view of the Chancellor. But the question being made, it will be briefly examined. It cannot be doubted, that two persons capable of contracting, may contract for the purchase and sale of real estate, defeasible by the payment of money at a future day. That is, that a sale and conveyance may be made, with a right reserved to the vendor to *re-purchase* the property at a price agreed upon, and at a specified time. Such a transaction would be a conditional sale, without a right of redemption in the vendor, after the expiration of the time fixed upon for the payment of the stipulated price. But it is sometimes exceedingly difficult to draw the line between a mortgage, and a conditional sale; to determine whether the purpose of the parties was to treat of a *pur-*

*chase* at a price agreed upon; or whether the object of the transaction was a security for the payment of a pre-existing debt, or the re-payment of money advanced, or lent, of which the case of *Conway's Executors vs. Alexander,* 7 *Cranch,* 218, is a striking example; where the judges had much difficulty in arriving at the conclusion, that it was a case of conditional sale. So there may be a sale of the equity of redemption to a mortgagee, where the transaction is fair, untainted with any advantage taken by the mortgagee in the use of his incumbrance, of the necessities of the mortgagor, to influence him to dispose of his estate for less than the real value. But a transaction constituting a mortgage, cannot be converted into *a sale,* and lenders of money being less under the pressure of circumstances calculated to control the free exercise of the judgment than borrowers, they may often be tempted to avail themselves of that advantage, in order to attain unequitable bargains. The leaning of courts of equity therefore is against them, and doubtful cases have generally been decided to be mortgages. The inquiry is, and must always be, whether the contract in the particular case, is a clear actual *sale,* or a security for a debt due, or for the re-payment of money lent.

Whenever the intention is to take a security for a subsisting debt, or for money lent, and to avoid or restrict the equity of redemption, Chancery seeking to protect the debtor against the rapacity of the creditor, and to do full and equal justice between the parties, will defeat such intention, by treating the transaction as a mortgage, and extending to the debtor the benefit of the equity of redemption, and compelling the creditor to accept the principal and interest of his debt; which is all that he is in justice entitled to, or ought to seek to attain.

A covenant to pay the debt, or to repay the money lent, is not (though proper to be introduced) an indispensible ingredient to a mortgage. If a security for the money is intended, that security is a mortgage, though not bearing upon its face the form of a mortgage, which chancery does not

respect, but looking through the whole transaction as far as it can, (with the defeasance, if there be one,) to ascertain the true character of the contract; if it be found to be different in reality from the appearance it assumes, will remove the veil with which it is covered. | And where the relation of mortgagor and mortgagee is once fairly established, though the equity of redemption may be sold or disposed of to the mortgagee.; yet unless the transaction appears to be fair, and unmixed with any advantage taken by the mortgagee of the necessitous circumstances of the mortgagor, equity will hold the parties to their original relation of debtor and creditor.

Let us then apply these principles of equity to the case before us. Here there was a loan of money, and a mortgage given on the 13th of May, 1828, as a collateral security for the re-payment of it. We find that on the 7th of November, of the same year, an absolute deed for the same property was given by the appellant to the defendant, accompanied by a defeasance, or bond of conveyance, on the payment by the appellant, at the expiration of twelve months from the date of the same sum of money, for which the original mortgage was given as a collateral security.

These two instruments are stated in the answer, to have been made on the proposition of the appellant, professing his inability to redeem the mortgage within the time stipulated, to give to the defendant an absolute deed, if he would extend the time limited for *re-payment* of the sum, to secure which the original mortgage was given, and also execute to him a bond for the *re-conveyance* of the property on payment of the money, at the expiration of twelve months from the date.

An absolute deed of conveyance, and an accompanying defeasance, or bond for reconveyance of the property to the grantor, on his paying a specified sum of money, will not always, and necessarily, constitute the transaction a mortgage; but it may according to circumstances be a conditional sale—as where the deed is not given to secure the pay-

ment of a pre-existing debt, or of money lent, but the negotiation is for the *purchase* and *sale* of the property, with the *mere privilege* of *re-purchasing* at a stipulated price. This is put only as an example. But where the contract is for the securing of money, the transaction is in equity deemed a mortgage. In this case there was no negotiation for the sale and purchase of the property; on the contrary, there was a debt due originating in a loan of money, and the negotiation was for an extension of the period of *re-payment* arising from the professed inability of the complainant to pay it at the stipulated time. No new consideration passed; to obtain further time by a debtor straightened in his circumstances, was the only inducement to the deed, and the payment on which the property was to be re-conveyed, was merely a *re-payment* of the very sum that was lent. And it is in proof, that the defendant thought that, that sum was less than the value of the property.

It is alleged in the answer, but no where proved, that the proposition to give an absolute deed, and take a bond of reconveyance moved from the complainant. Suppose it did; it was made by a necessitous debtor, under the pressure of circumstances, and the fear that he would be unable to pay the money at the time limited in the former mortgage; and from his condition, ignorant probably of his equity of redemption, secured to him by that instrument. It is by no means clear that the defendant did not himself consider it as a mortgage. He twice extended the time of payment after the expiration of the twelve months limited by the bond of conveyance; sometimes spoke of it as his, the aplant's property, frequently saying that he should have it again, if he would pay him the money. At one period indeed he said, that the complainant should never have it, if he could prevent it; at another time, when the money was offered by the complainant, that he would not let him have it, as he had been at the expense of insuring it; and once when speaking of the bond of re-conveyance, he said, that *if it was not for that paper, he would have it safe enough.*

On the other hand, it would appear that the complainant never supposed it to have been a *sale* of the property, but only a security for the debt; frequently demanding it; at one time saying, that the defendant was much changed, and wished to cheat him out of his property, under the advice of others; and at another time charging one of the witnesses with being his adviser.

It is also proved by one of the witnesses, that the defendant told him, the complainant had offered to pay him the money, but that he had given him three months longer, in order that he might return the money again. And in speaking to another witness *of the way in which he came to get the property,* he said that the complainant *was insolvent, and wanted money, and was unable to pay the debts he had contracted, and came to him to borrow money, and had this property;* at the same time stating, *that he had given the appellant a paper, by which the property was to fall back again to the appellant, if he paid the money within a certain time; that the time limited had run out about a year. That the money had not been paid, and that he then (at the time of the conversation) supposed that the property was his, and very cheap.* The conversation with this witness is worthy of some consideration, as tending to show, not only the pressure of adverse circumstances, under which the appellant was laboring, (his urgent want of money, and supposed state of insolvency, and inability to pay his debts) and therefore a fit subject, and in a state of mind and feeling, to be prayed upon; but also to show that if the defendant did not take advantage of his necessities, he did not at that time at least, consider the property as *sold* to him, but that it was given as a security for the money, which was not equivalent to its value, and had become his, by reason of the non-payment of it. And if the transaction was at the time it was entered into, a security for money lent, it continues to be so, notwithstanding the money was not paid at the expiration of the twelve months after the date of the bond, and has not yet been paid. This transaction if considered

as of a doubtful character, would be treated in Chancery as a case of a mortgage. But seeing that there is no evidence of a negotiation for the sale and purchase of the property; that the debt originated in a loan, or advance of money; that the deed of the 7th of November, 1828, was given in consideration of an extension of time for the re-payment of it, with no additional advance of money by the defendant; that the complainant at all times considered himself as entitled to redeem; always keeping up a continued claim, and that he twice offered to repay the money, which was considered by the defendant himself, as less than the value of the property; all this, in connexion with the other facts and circumstances of the case, strongly shows the character of the transaction to have been that of a security for the money, and gives to it the properties of a mortgage. This brings us to the examination of the other question properly before us; whether the defendant should be allowed for the permanent improvements put by him upon the premises?

It is a general principle in Chancery, though not without exceptions, that a mortgagee in possession is not to be allowed for new improvements erected upon the premises; and this works no hardship upon the mortgagee, who before foreclosure is not the substantial owner, nor under any obligation to make any repairs but such as may be necessary. But as a general rule, it is proper and necessary for the protection of the rights and interests of mortgagors, who would otherwise be very much at the mercy of their mortgagees. If it were otherwise, a mortgagee might from whim or caprice make what he considered to be improvements, but such as the mortgagor would not choose to have made. A mortgagor might be in a situation to redeem, by paying the principal and interest of the debt; but wholly unable to redeem, if obliged to pay also for such improvements as the mortgagee might be able and think proper to erect. Such a clog upon the equity of redemption would be subject to great abuses, and increase the difficulties in the way of the right to redeem, and might be resorted to

by a mortgagee, knowing, and disposed to take advantage of, the necessities of the mortgagor, as a means of defeating the equity of redemption.

Here, the defendant claims to be allowed for houses erected by him upon the mortgaged premises; and we are to inquire whether, under all the circumstances, this case falls within any of the exceptions to the general rule.

The property mortgaged, taking the acknowledgment, (or it may be said) the boast of the defendant himself, exceeded in value the amount of the sum lent; and there is no proof that it had ever begun to fall into a state of decay and dilapidation, which threatened so to diminish its value, as that it would not be an adequate security for his money.    There is no evidence that the houses standing upon the premises were in a ruinous state, and that he pulled them down and built the new ones as a substitute, and for the purposes which they served: on the contrary, the new houses were erected for new and other purposes.    There was no long continued possession, and acts of ownership by the defendant, and acquiescence by the complainant, with no claim of the right to redeem, begetting the belief on the part of the defendant that the mortgaged premises belonged to him.

But the deed and defeasance were executed on the 7th of November, 1828, and the houses were begun not quite three years after, and not finished when the bill was filed on the 7th of March, 1832; during the whole of which time there was a continued claim by the appellant of the right to redeem; sometimes charging the defendant with a design to cheat him, and twice offering him the money, and demanding the property, the last time in August, or September, 1831, when the defendant refused to let him have the property, on the alleged ground that he had been at some expense in insuring it, but gave him no notice of his intention to put up the new improvements, which were commenced in October, 1831, not more than one or two months after, and there is no proof that the complainant ever had notice of his intention to build.

Not only was there this continued assertion of right by the appellant, accompanied by the observation by the defendant to one of the witnesses, that if it was not for that paper, (speaking of the bond for re-conveyance,) he would have it safe enough, clearly showing his own doubts upon the subject of his own right, which surely, taken together, was quite sufficient to have put him upon the inquiry, which any prudent man, or one disposed to do what was right, would have made; but there is besides proof of his frequent declarations, that the appellant should have *his* property again, if he would pay him the money.

Under such circumstances it is difficult to conceive, that he confidently believed the property belonged absolutely to him, notwithstanding he once said, that as the money was not paid at the expiration of the time mentioned in the defeasance, *he supposed it was his;* and his declaration, that the appellant *should never have it if he could prevent it,* being a qualified declaration, and not a positive assertion of right, would seem to be explained by the fact, that in October, 1831, not more than two months after he had refused to receive the money and give up the property, on the pretence that he had been at the expense of insuring it, concealing his intention to put up the new improvements, he commenced building in the absence, and without the knowledge of the appellant, with a view, as it would appear, to make good his threat, *that he should never have it, if he could prevent it,* under the supposition, (as he had before said he was insolvent,) that he would not be able to redeem it with that additional charge upon it.

The circumstance that the appellant was in *Baltimore,* and saw, and spoke of the improvements after they were begun, is not sufficient evidence of his approbation, or acquiescence to charge him with the cost of them. He had been refused the property on his offering to pay the money, not more than a month or two before, and had gone away without being consulted by the defendant, who took advantage of his absence to commence the buildings. And he

may well have thought that it was useless to say any thing about it, as it was not very probable that he who had refused to let him have it merely because he had effected insurance upon it, would do so, after he had begun to improve it, or pay any attention to any thing he could say.   But he did all that was left for him to do ; he filed his bill to redeem, within five months after the buildings were commenced, and before they were finished.

We do not think therefore, that this case falls within the principle of any case which is now recollected, that has been excepted out of the general rule.

The defendant made the improvements in his own wrong, and at his own hazard, and cannot be allowed for them.

THE DECREE, AS TO THE ALLOWANCE MADE FOR IMPROVEMENTS, REVERSED, WITH COSTS IN THIS COURT.