[No appeal was taken in this case.]

---

THE BANK OF WESTMINSTER
*vs.*
WILLIAM PINKNEY WHYTE,
PERMANENT TRUSTEE OF
GEORGE SUTER.

WM. P. WHYTE,
PERMANENT TRUSTEE OF
GEORGE SUTER
*vs.*
JOHN FISHER ET AL.

MARCH TERM, 1850.

[ABSOLUTE CONVEYANCE A MORTGAGE—RIGHT OF INSOLVENT TRUSTEE TO SELL MORTGAGED PROPERTY.]

No matter how absolute a conveyance may be on its face, if the intention is to take a security for a subsisting debt, or for money lent, the transaction will be regarded as a mortgage, and will be treated as such.

Parol evidence is admissible to show, that an absolute conveyance was intended as a mortgage, and that the defeasance was omitted or destroyed, by fraud or mistake.

But, unless accident, fraud, or mistake can be shown, or in cases of trusts, parol evidence cannot, either at law or in equity, be admitted to contradict, add to, or vary the terms of a will, deed, or other instrument.

It is the right and duty of the trustee, in insolvency, to sell the mortgaged property of his insolvent, and pay off the liens and incumbrances thereon.

Though the transfer made to secure a debt, is in the nature of a trust, still it is the duty, and the right of the trustee, in insolvency, to dispose of the property.

[On the 20th day of November, 1845, George Suter, of the city of Baltimore, being indebted to the Westminster Bank in the sum of six thousand dollars, agreed with that institution, through its cashier and agent, John Fisher, that, in consideration of the advance of three thousand dollars, in addition to the sum already due by him, he, the said Suter, would confess judgment for the whole sum of nine thousand dollars, and also by way of security for the repayment of the said loan of three thousand dollars, would assign and transfer to the said bank, three butcher stalls, held by him in different markets in the city of Baltimore.   The advance was made by the bank, and the judgment confessed, and stalls assigned by Suter.

On the thirteenth day of March, 1846, Suter applied for, and obtained the benefit of the insolvent laws, and William Pinkney Whyte was appointed his permanent trustee.

The trustee, under the insolvent laws, considering the transfer of the said stalls by Suter as only a security for the payment of the loan of three thousand dollars, and claiming the disposition of said property in his capacity of permanent trustee, advertised the same for public sale in the city of Baltimore, to take place on the twentieth of July following.

Before the day appointed for the sale, a bill was filed by the Westminster Bank, claiming the conveyance made by Suter as absolute, and the surplus, if any, after the payment of the three thousand dollar loan, of the money arising from their sale, as applicable to the part payment of the prior debt of six thousand dollars, and praying a writ of injunction against the the trustee, prohibiting such sale.   An injunction was accordingly issued on the fourteenth of July.

An answer was filed on the 30th of July, 1847, by the permanent trustee, denying the title of said bank to said stalls, except by way of mortgage security, and praying a dissolution of the injunction.

A bill was also filed on the 10th of May, 1847, by Whyte,

the permanent trustee, to set aside the transfer as fraudulent in view of the insolvent laws; and the answer of the defendant, Fisher, was filed on the 29th of June following.

In October, 1848, a sale was made of said stalls by John Fisher, cashier of the said bank, to one David C. Steiner, and an order to the market master for the delivery of one of the said stalls given to said Steiner.

On the 21st of October, 1848, upon a bill filed by the trustee, Whyte, for that purpose, an order was passed granting an injunction against the said Fisher and Steiner, and the market master, commanding them to refrain from interfering in any way with said property, until the further order of the court.

Upon the motion to dissolve the injunction granted upon the bill of the Bank of Westminster, the Chancellor said :]

—

THE CHANCELLOR:

These cases have been argued together, and are so connected, as in the view of the counsel and the court, to constitute but one suit.

The pecuniary interest involved is inconsiderable, but the questions which the case present are not unimportant.

The general rule is too firmly established to be questioned, that no matter how absolute a conveyance may be on its face, if the intention is to take a security for a subsisting debt, or for money lent, the transaction will be regarded as a mortgage, and will be treated as such. *Hicks* vs. *Hicks*, 5 *Gill & Johns.*, 75; *Dougherty* vs. *McColgan*, 6 *G. & J.*, 275.

And though the defeasance was by an agreement resting in parol, still, as between the parties, the deed, though absolute on its face, will be considered a mortgage, for parol evidence is admissible to show that an absolute conveyance was intended as a mortgage, and that the defeasance was omitted or destroyed by fraud or mistake. 2 *Kent's Com.*, 142, 143 ; *Henderson* vs. *Mayhew et al.*, 2 *Gill*, 393.

But it is likewise undeniably true, that unless accident, fraud, or mistake, can be shown, or in cases of trusts, parol evidence cannot either at law or in equity, "be admitted to

contradict, add too, or vary the terms of a will, deed or other instrument." *Bend* vs. *The Susquehanna, &c. Co.*, 6 *H. & J.*, 128; *Watkins* vs. *Stockett, ib.*, 435.

In this case, the transfer of the three stalls is absolute and unconditional, and if there was nothing in the answer of Mr. Fisher, to whom the transfers were made, and who acted as the agent of the bank in the negotiation with Suter, from which it could be fairly inferred that the object was to take security for money loaned, or to be loaned, it would fall within the general rule ; and the transfer could not be qualified by the introduction of parol evidence, neither fraud nor mistake being alleged.

But, looking to the pleadings in the cause, and especially to the answer of Fisher, to the bill filed by Whyte, as the permanent trustee of Suter, to set aside the transfer as fraudulent in view of the insolvent laws, which answer is invoked in these causes, and has been read without objection, and there can, I think, be no doubt that the transfer of the stalls was taken as security for the repayment of the money due to the bank, and not absolutely by way of purchase.

The language of the answer is, "that the said sum of three thousand dollars was not *lent* specifically upon the security of the three stalls in different markets in the city of Baltimore, but on the joint security of said stalls and other property of said Suter, which, at the time was believed by this respondent, to be bound by said judgment, the object of the Bank and Suter being, as understood by the respondent, to *secure* not only the money then advanced, but the debt previously due the bank."

It, therefore, clearly appears, that the transfer of the stalls was taken as security for a debt, and whether to secure the specific sum of three thousand dollars loaned Suter at that time, or the entire debt of nine thousand dollars, for which judgment was confessed, still the intention of the parties was merely to give and to take, a security for a debt, and, consequently, the transaction must be treated accordingly—that is, the transfer must be regarded as a mortgage or pledge, to secure the payment of a debt, and not as passing the absolute title to the creditor.

The position that this was the intention of the parties, derives powerful support from the fact, that the sum of three thousand dollars, advanced at the time of the transfer, was included in the judgment confessed by Suter. Indeed, I do not understand it to be contended by the counsel of the bank, that these three stalls were purchased by it, for the sum of three thousand dollars, because, if so, no conceivable reason could be assigned, for including that sum in the judgment. His argument is, that the transfer was absolute, and that the bank was to be at liberty to sell and apply the proceeds of the sales to the extinguishment, as far as they would go, of the entire debt of nine thousand dollars, for which the judgment was rendered. If that was the character of the transaction, that is, if the stalls in the hands of the bank, or its agent, were affected with a trust, to sell and apply the proceeds to the payment of the debt, still, I should think, that in the eye of a court of equity, the transfer would be regarded as a mortgage, being a mere security for the debt, and not an indefeasible transfer of the title.

My opinion then, is, that this transfer of these stalls, though absolute in terms, must be treated as a security merely, and be subject to the considerations governing such transactions.

And this conclusion is arrived at without trenching upon the principle, that parol evidence in the absence of fraud, or mistake, is inadmissible to vary or contradict the clear import of a written instrument, but upon the confessions and statements of the answers themselves, which, in my opinion, prove clearly that a security merely was intended to be taken, and if so, it follows, that however absolute the form of the instrument, it will be dealt with as a mortgage.

The remaining question has reference to the right of the insolvent trustee of Suter to sell this property, and administer the proceeds of the sales under the control of the court, by which he was appointed, and this question depends upon the true construction of the 5th and 7th sections of the act of 1805, chap. 110.

It is conceded, and indeed could not be disputed, since the decision of the case of *Alexander* vs. *Ghiselin et al.,* 5 *Gill,*

138, that if the transfer of this property is to be regarded as a mortgage or pledge for the security of a debt, that it would be the right and the duty of the insolvent trustee to sell it and pay off the liens and incumbrances thereon, the opinion of the Court of Appeals in that case being explicit to that effect. But it is urged, that the transfer here, though made to secure a debt, is in the nature of a trust, and that the insolvent trustee has no authority to interfere with the trustee selected by the convention of the parties, whose right it is to proceed in the discharge of his duty, undisturbed by any such interference.

It appears to me, however, that, assuming the transaction to be such as the counsel of the bank has characterized it—that is, that the property in question, though transferred to Mr. Fisher absolutely, was nevertheless affected with, and to be regarded as subject to, a trust for the payment of the money due from Suter to the bank; and that parol evidence is admissible for the purpose of showing the trust, still it seems clearly to come within the scope of the principles settled by the appellate court in the case referred to.

Looking to the design of the insolvent laws, as expounded in that case, which was to secure a prompt, single and harmonious administration of the estate of the insolvent, which could only be effected by bringing all the parties interested before one and the same tribunal; it would seem to be essential that no one should be permitted to participate with the insolvent trustee in the execution of the trust, by which, as observed by the court in that case, "adverse interests might be created, delays engendered, if not ensured, and probably different, and possibly conflicting, tribunals consulted."

Considering that this question is, in effect, settled by the case in which these remarks were made, I shall pass orders, dissolving the injunction issued upon the bill of the Bank of Westminster, and continuing that which issued upon the bill of the insolvent trustee.

[No appeal was taken from this order.]