(Decided June 1st, 1864.)

---

SMITH ARTZ AND WIFE, AND OTHERS, *vs.* WILLIAM GROVE.

CONTRACTS, SPECIFIC PERFORMANCE OF: EVIDENCE: ADMISSIONS.—On a bill for the specific performance of a contract relating to land, if the agreement set forth in the bill, and that admitted in the answer, be substantially the same, the absence of a written memorandum, and the sufficiency of the evidence to sustain the allegations, are immaterial. Admissions supersede the necessity of proof.

CONTRACTS, &c.: STAT. OF FRAUDS.—The statute of frauds does not forbid the specific performance of parol contracts as to real estate, when the defendant admits the agreement, and does not rely on the statute as a bar.

The substance of the agreement, which shows the primary object of the parties, is what Courts of equity regard, and when that requires a specific performance they will execute it, if the cause be a proper one, whatever may be the character of the instrument.

ABSOLUTE CONVEYANCE, WHEN TREATED AS A MORTGAGE.—No matter how absolute a conveyance may be on its face, if the intention be to take a security for a subsisting debt, or for money lent, the transaction will be regarded as a mortgage, and will be treated as such.

————: PAROL DEFEASANCE.—And although the defeasance is by an agreement resting in parol, still, as between the parties, the deed, though absolute on its face, will be considered as a mortgage; for parol evidence is admissible to show, that an absolute conveyance was intended as a mortgage, and that the defeasance was omitted or destroyed by fraud or mistake.

FRAUD, ACCIDENT OR MISTAKE: PAROL EVIDENCE.—But it is likewise undeniably true, that unless accident, fraud or mistake can be shown, or in cases of trusts, parol evidence cannot, either at law or in equity, be admitted to contradict, add to or vary, the terms of a will, deed, or other instrument.

Artz & Wife, vs. Grove.

INJUNCTION AND APPEAL BONDS: WITNESS, COMPETENCY OF.—Courts have no
authority to discharge a surety on an injunction or appeal bond, and sub-
stitute another, so as to make the former a competent witness. Such a
power may be very convenient, but it impairs the obligation of contracts,
and violates our organic law.

APPEAL from the Circut Court for Washington County,
sitting as a Court of Equity :

The bill in this case was filed on the 3d day of April 1854,
by the appellee, setting forth that in the year 1843, the appel-
lee purchased from Elias Baker and John V. Swearingen, a
parcel of land in Washington County, in the State of Mary-
land, of about fifty-seven acres, for $22.25, or $22.75 per
acre, and that he paid thereon about $500 or $600. That
afterwards, at March term 1845, of Washington County
Court, the said vendors obtained judgments against the
said appellee, upon notes given on account of the said pur-
chase money of said land, amounting to $669.90 principal,
besides interest and costs. That the appellee went into pos-
session of said land, and improved the same, by erecting
thereon a dwelling, barn, &c., costing at least $1000. That
the appellee being unable to pay the residue of the purchase
money due on the judgments aforesaid, and having receiv-
ed no deed for said land, he agreed with a certain Isaac
Long, to whom he applied for friendly aid, that the said
Long should receive the deed for said land, he, the said
Long, paying and satisfying the said judgments, and should
hold the said deed as his security, until the appellee should
be able to reimburse him the money he should pay in sat-
isfaction of said judgments with all interest thereon. That
said agreement was verbal, and, in pursuance thereof, a
deed was made to said Long by said Baker and Swearingen,
in which the appellee and his wife joined, dated March
4th, 1848, and was duly recorded; but the appellee denies
the correctness of the recitals therein. That the appellee
continued in possession of said land from that day to the
time of filing his bill, and was then in possession; and,
from time to time, paid to said Long large sums of money

as well as rendered him certain services, and furnished him with various articles; which money and services were received by said Long, on account of the said outlays for the appellee, viz: mainly, the payment of said judgments. That said Long desired the appellee to allow him an annual rent for the said land, which was agreed to by the appellee, provided, that in the account between them, the appellee should be credited therewith, from time to time, as paid; so that if the appellee could not refund the money, so as aforesaid paid by said Long, the said Long could be secure, at all events, of an annual rent, more than equal to the interest upon the money paid by said Long for the appellee. That said Long agreed to this, only adding that he ought to be paid something for any services he might render the appellee in this business. That, on one occasion, the said Long executed to the appellee a receipt for about $100, which specified that the same was in part payment of the moneys so as aforesaid advanced by said Long for the said appellee, and when he should be fully repaid, the said land was to be conveyed to the appellee, but the same has been lost or mislaid, and cannot now be found, after the most diligent search; but the appellee is prepared to prove its contents to be substantially as above stated. That to aid the appellee in the repayment to said Long, a certain John W. Hollida, a near relative of the appellee, authorized the said Long to receive certain rents from certain lands of the said Hollida, and that said Long did accordingly receive rents from that source, for which the appellee is entitled to credit in his account with said Long. That after several years had passed, in which various payments had been made to and received by said Long, in pursuance of the verbal agreement aforesaid, the appellee and the said Long came to a settlement, in which the said Long was charged with the sums of money, so paid to him, and other matters chargeable in account, and credited with the money so paid by said Long, and the interest thereon, and a statement of the same was accordingly made in the presence and under the

direction of said Long, but which statement did not charge the said Long with the several annual payments for rent; and when said omission was discovered by the appellee, he objected thereto, and claimed to charge said Long therewith, observing that he, the appellee, could not pay rent for the land, and interest on the money at the same time; to which said Long replied, that he knew he, (Long,) had promised not to charge him with or make him pay rent and interest too; but that the appellee should pay him for his services, to which the appellee agreed. That by the statement something over $300 was found to be due said Long. That this occurred in 1850, and said Long was then in possession of said statement, and had a copy thereof made for the appellee, which, while in the possession of said appellee, became defaced and obliterated, and which is exhibited with the bill. That since said statement was made, the appellee has paid to said Long $600; $400 in money, and the residue in fish and freight, which was designed to cover any balance he might owe the said Long upon the account aforesaid, and which said payment is averred to be more than ample to pay and satisfy said Long all payments made by him for the appellee. That the said Long having thus received all he is entitled to receive from the appellee, ought to convey said land to the appellee in fee, as he agreed to do. ·

The said Isaac Long in his answer admits the purchase by Grove of said land from said Baker and said Swearingen, but at what price he did not know. That the appellee being unable to pay the purchase money and the executions, then in the sheriff's hands, amounting to $1200 or $1300, requested the respondent to pay said purchase money and executions, and take a deed for the land, with an understanding that if the appellee should be able to repay him the full amount of principal, interest and costs, that he would reconvey the same to him; that in compliance therewith, said Long paid the said Baker and Swearingen and

the sheriff, the sum of money aforesaid, and received a conveyance for the said land, in which the appellee and his wife joined. That the respondent being willing to serve the appellee further, did lease him said land at a rent of $100 per year, so that he might have a home and occupation; under which lease renewed from time to time, the appellee hath continued [in possession thereof from thence until now.—That independent of these debts paid for the appellee, this respondent has paid large sums of money for him, the said Grove, to divers persons, and to the Washington County Bank, Shafer and others, and has various charges against him for articles furnished. That at various times the appellee did pay the respondent sums of money and had small charges against him, but these payments and charges were greatly less than the amounts paid for said appellee, other than the purchase money and executions aforesaid. That independent of the sum of money paid as aforesaid on the land, the appellee is largely in the respondent's debt, and it is denied, that any payments or charges of the appellee, were, at any time, sufficient to pay the mere running account (distinguished from payments on land) between them; that for all rents paid by the appellee, he was thus credited on said running account, and that there is now rent due for more than three years' occupation of said land. That from the date of the lease in April 1848, two years rent was paid, that he collected the further sum of $100 by a distress warrant, and that the residue is unpaid. That the respondent has no recollection of having given a receipt for the payment of any money which recited that it was to be credited on account of the purchase, and he therefore denies the same, as from the time of the first advance of money for the appellee up to the present, he was and is in debt to the respondent on account of money paid for him, &c.; and so great did this indebtedness become, and his liabilities, as surety, were so large, that to quiet this respondent's apprehensions, the appellee prevailed on a certain John W. Hollida to assign

Artz & Wife, vs. Grove.

certain rents to respondent, for his protection, and that all moneys received from this source were credited and paid on debts for which he was surety as aforesaid. That the respondent being apprehensive of sustaining loss, from time to time, pressed appellee to make payments to him on account of his running indebtedness, and to relieve him from his liability as surety. That the appellee avoided and evaded him as long as possible; but that eventually, the respondent did get him before a certain Samuel Cunningham; and endeavored to bring him to some adjustment of their open and running accounts. That in and by this settlement the appellee was found largely in the respondent's debt, on the mere open accounts, without noticing the $1200 or $1300, purchase money. That the respondent denies he has a copy of said settlement, but one was furnished the appellee, which fully exhibited the items of debit and credit, but that the same as exhibited by the appellee, is so blotted, blurred and rendered indistinct whilst in appellee's possession, that the credits of the respondent are wholly illegible, whilst the charges against him are distinct. That the respondent denies the payment of the $600 to him by appellee since said settlement, as alleged, or in any other way, sum or sums; and further denies, that any part of the money paid for said land has been refunded to him in any way; and charges, that upon a fair settlement, which he is most anxious to obtain, the appellee will fall largely in his debt upon all accounts. That the appellee being in arrear for rent for the year ending in April 1853, a distress warrant was levied upon the appellee's property by a constable, and in and by this mode, the respondent secured and received this year's rent without a murmur from or pretence on the part of the appellee that he did not fairly owe it. That finding the appellee unmindful of the respondent's kindness, &c., and evincing a disposition to injure the respondent, he, as landlord, gave the appellee notice to quit said premises; when, for the first time, the idea of pretended payments occurred to him, and he would have been ejected from said premises, but for the

interference of this Court by injunction. That the respondent is anxious to come to a true, full and perfect account with the appellee for all money transactions between them, and prays that the same may be taken under the direction of the Court; and, utterly denies that the appellee has paid the amount of money paid for him to Baker and Swearingen, on the executions aforesaid, but charges that the appellee is largely in debt to him otherwise, and prays for a dissolution of the injunction.

The deed from Baker and Swearingen, and Grove and wife, to Long, recites, that the land had originally been sold to Grove for $880, and that "the said Grove failing and neglecting to comply with the terms of sale of said real estate, the said Elias Baker and John V. Swearingen, by virtue of authority as aforesaid, did sell the real estate as aforesaid, and hereinafter mentioned, to the said Isaac Long; and having received in full the purchase money as aforesaid, the said parties of the first part have agreed to execute these presents.

Subsequently the defendant Long died, and his devisees and executors were made parties defendants, and commissions were issued to take testimony, and the complainant on the 10th of August 1855, made application to have George W. Grove, one of the sureties in the injunction bond, relieved, and that another bond should be filed in lieu of the original bond, in order that the said George W. Grove could be rendered competent, and examined as a witness for the complainant. The Court accordingly ordered another bond to be taken, and the said Grove, the surety, to be discharged from his responsibility on the bond.

At the hearing of the cause the Court below, (PERRY, J.,) decreed that the complainant was entitled to relief as prayed in and by his bill of complaint, and to a reconveyance to him and his heirs of the lands and tenements mentioned in said bill, &c., upon the payment of the money found to be due by the proofs in said cause, &c.; and further adjudged that on the first day of June 1853, there was

due from Grove on the contract set up in the bill, the sum of $454.28; and further ordered, "that the said complainant pay to the executors of the said Isaac Long, on or before the first day of February next, or bring into this Court by said day to be paid to them, or to such person as the Court may then order the same to be paid, the said sum of $454.28, with interest thereon from the said first day of June 1853; and that upon the payment of such sum of money, the land to be conveyed to the said Grove, free and clear of all claim of the heirs or devisees of the said Long; and that Artz and wife, the devisees, should join in the deed; and in default of such payment, the land to be sold by a trustee appointed by the decree, &c.; the terms of sale prescribed, being one-third of the purchase money in cash, on the day of sale, and the residue to be paid in two equal instalments, of one and two years from the date of sale.

From this decree the defendants have taken the present appeal.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH and COCHRAN, J.

*R. H. Alvey*, for the appellants:

1st. The testimony of George W. Grove, the main witness for the complainant, should not be considered in this cause; because, first, he was interested at the time of his examination in the subject matter and result of the suit; and, secondly, his testimony relates to papers, and the contents of papers, that were not produced, nor was there any notice given to produce before his examination. This witness was incompetent because he was bound on the injunction bond; and the order of Court and the substituted bond did not release him. The Court had no power to violate or impair the obligation of the surety on the first bond. That bond was at least liable for all damages accrued up to the time of the second bond, and the latter did not relate back, and secure indemnity from the issuing of the in-

junction, but only, if at all, from its date. The obligation is not retrospective, but altogether prospective. The condition of this substituted bond is, "to satisfy and pay all damages and charges that shall occur in said Court by reason of the said suit," not such as had or shall have occurred. *U. S. vs. Giles*, 9 *Cranch.*, 212. *Farrer & Brown vs. U. S.*, 5 *Peters*, 372.

2d. Treating the bill as one for specific performance, it is radically defective for want of proper and specific allegations; there is no sufficient act of part performance alleged to entitle the parties to relief. Proper and sufficient allegations in a bill are necessary to prevent surprise, and consequent injustice. And where a bill is properly excepted to upon the ground of the insufficiency of its averments to charge a party proceeded against, whatever may be the proof, no decree can be pronounced against him. *Berry vs. Pierson*, 1 *Gill*, 234. And, in applications for specific performance, the rule is particularly strict, that the contract and all acts relied on as part performance, should be set forth and made appear definitely, and with entire certainty; as the proof of no acts of part performance will be received or decreed sufficient, unless it shows such acts to be certain and definite in their object and design, and to refer exclusively to a complete and perfect agreement alleged in the bill. 2 *Story's Eq. Jur.*, sec. 762. *Mundorff vs. Kilbourn*, 4 *Md. Rep.*, 462.

3rd. If it be insisted that the answer admits the contract, and does not set up the Statute of Frauds as a defence, the answer is, that the understanding and nature of the transaction as stated in the bill, and that stated and admitted in the answer, are entirely different. The understanding in regard to the reconveyance of the land, as stated and admitted in the answer, is without the mutuality essential to entitle Grove to a specific execution as against Long. If the agreement could not have been specifically enforced by Long, a Court of Equity will not coerce a specific performance at the instance of Grove.

Duvall vs. Myers, 2 Md. Ch. Dec., 401. Small vs. Owings, 1 Md. Ch. Dec., 363. Geiger vs. Green, 4 Gill, 472. Tyson vs. Walls, 7 Gill, 124. Lawrenson vs. Butler, 1 Sch. & Lef., 18. Methodist Ep. Ch. vs. City of Balto., 6 Gill, 391. Cabeen vs. Gordon, 1 Hill Ch. Rep., 51. Rider vs. Trotter & Gray, 10 Md. Rep., 282. Bodine vs. Glading, 21 Penn. St. Rep., 54. And this is not a case of resulting trust. Hays vs. Hollis, 8 Gill, 357. Hollida vs. Shoop, 4 Md. Rep., 465.

3rd. And, if part performance of the contract be relied on, both the allegations of the bill, and the proof, fail to entitle the complainant to aid from the Court. The improvements, placed upon the land by Grove, were made before the advance of money, and acceptance of the conveyance, by Long, and, therefore, cannot be referred to the contract with him. Grove was in the possession at the time of the alleged contract with Long, and his continuing in possession afterwards, is no proof of his possession being referable, exclusively, to the contract set up in the bill. Hatcher vs. Hatcher, 1 McMullan Ch., 311. Christy vs. Barnhart, et al., 14 Penn. St. Rep., 260. Wills vs. Stradling, 3 Ves., 378. Frame vs. Dawson, 14 Ves., 388. Johnston vs. Glancy, 4 Blackford Rep., 94.

But the possession of Grove, after the alleged contract, is referable entirely to another and different contract; a subsidiary contract, whereby Grove became the tenant of Long, and agreed to pay him rent for the land. Such possession cannot be taken as part performance. Owings vs. Baldwin, 8 Gill, 337. 2 Story's Eq. Jur., sec. 763.

And it is now fully established, that the part payment of the purchase money will not be taken as a sufficient performance, or part performance, of the contract, to entitle the party to specific execution. 2 Story's Eq. Jur., secs. 760, 761. Clenan vs. Cooke, 1 Sch. & Lef., 40, 41. O'Herlihy vs. Hedges, Ibid, 129. 1 Sugd. Vend. & Pur., ch. 3, sec. 7. 1 Greenlf. Ev., sec. 37.

4th. Taking the pretence of Grove, as the true state of

the case, that the deed, though absolute and unconditional, was intended, in fact, only as a security to Long for the money advanced by him, and should therefore be treated as a mortgage, yet, in the absence of all allegation or proof of fraud, accident, or mistake in the making of the deed, whereby the defeasance was omitted, Grove is utterly estopped and precluded from showing, by parol, any agreement or understanding entered into before, or at the time of making such deed, whereby the character and purpose of it is changed or made different from what it purports to be on its face. On general principles the rule is, that where there is a written contract, all antecedent propositions, negotiations, and parol interlocutions, on the same subject, are deemed to be merged in such contract. And, "where there is no fraud and the party relies upon the honor, word or promise, of the defendant, the statute making that promise void, equity will not interfere." Ld. Hardwicke in *Montacute vs. Maxwell*, 1 *P. W.*, 618. *Watkins vs. Stockett*, 6 *H. & J.*, 435, 444, 445. *Wesly vs. Thomas*, 6 *H. & J.*, 24. *Worthington vs. Savage Manf. Co.*, 1 *Gill*, 284. *Kent vs. Carcaud*, 17 *Md. Rep.*, 291. *Atkinson vs. Paige*, 1 *Bro. Ch. Ca.*, 92. *McEldery vs. Shiply*, 2 *Md. Rep.*, 25. *Leman vs. Whitney*, 4 *Russ.*, 423, (3 *Eng. Cond. Ch. Rep.*)

5th. The acts and conduct of Grove, in reference to the land in controversy, and the ownership thereof, amount to an *estoppel in pais*, and preclude his right to relief in equity. *Funk vs. Newcomer*, 10 *Md. Rep.*, 301. *Lyon vs. Reed*, 13 *M. & W.*, 285. *Powell on Ev.*, 152. *Freeman & Sedwick vs. Sedwick*, 6 *Gill*, 29.

6th. If it were proper to entertain the bill and grant relief at all, an account should have been directed between the parties. It was certainly error, in the Court below, in decreeing the money adjudged to be due on the contract, to be paid to the executors of Long, instead of the devisees of the land. The land had been specifically devised, and there was a manifest intent that the devisees should enjoy the

devise beneficially; and if the devisees were required to execute the contract of the devisor, and convey the land, they should receive the consideration. There is no equitable conversion effected. *Wall vs. Bright*, 1 *Jac. & Walk.*, 474. *Drant vs. Vanse*, 1 *Young & Collier*, 580. *Ludson vs. Frazier*, 12 *Sim.*, 263.

8th. The decree in this case is not agreeable to the case made by the bill, and is different from and inconsistent with the object of it. A bill for one purpose cannot be made to answer for another; and hence a decree for a sale of the land, upon an application for specific performance, praying a conveyance to the complainant, is improper. *Chalmers vs. Chambers*, 6 *H. & J.*, 29.

*A. K. Syester*, for the appellee, argued :

1st. That although the contract set up in the bill is in relation to lands, and rests in parol, the answer admits it, and does not interpose the plea of the statute, and the case is therefore rescued from the operation of the statute. *Albert & Wife vs. Winn & Ross*, 5 *Md. Rep.*, 66. *Edwards vs. Grand Junction Railway*, 1 *Mylne & Craig*, 650, (13 *Eng. Ch. Rep.*, 559.)

2nd. It is not competent to the devisees and personal representative of the original defendant, after having adopted his answer, now to set up the Statute of Frauds by way of exception to the sufficiency of the allegations in the bill. *Att'y Genl. vs. Day*, 1 *Ves.*, *Sr.*, 221. *Spurrier vs. Fitzgerald*, 6 *Ves.*, *Jr.*, 548.

3rd. The appellee having paid his money, and otherwise acted in full execution of his part of this contract, on the faith that it would be performed, a Court of Equity will struggle to prevent the injustice arising from the refusal of the defendant to perform his part of the agreement, and will be content to know the *substance* of the *transaction and the primary object* of the parties; and if it appears from the whole record that there was a binding agreement for a specific object, equity will compel a spe-

cific performance. 2 *Story's Eq.*, sec. 715. And where a party has received (as in this case) the benefit of the execution of the agreement, and the plaintiff fails to establish the precise terms of the contract, the Court will endeavor by looking into the relations and situation of the parties, and all the attending circumstances to collect the terms and ascertain the nature of the agreement. *Dart on Vendors*, 480, and the authorities there cited.

4th. Although nothing alleged or proven may amount to a sufficient part performance, yet where, as in this case, the party has acted for many years upon the assumption that a contract existed, acts which might not *in themselves, irrespectively of the lapse of time,* be regarded as a sufficient part performance, have been held to have that effect. *Blackford vs. Kirkpatrick*, 6 *Bevans*, 232.

5th. In this case the terms are clear, the transaction stated in the bill are admitted in the answer, and established by proof. The statements in the bill, answer and evidence; all come to the same thing, namely: that the defendant *should pay the money, take the deed, and hold that deed until he was repaid.* The fact that the deed is mentioned in the bill as a *security*, and that it is not so stated in the answer, cannot be a variance, because the answer states that the *deed was to be held until a repayment.* Why hold the *deed until the money was repaid?*

6th. As to the mutuality of the contract. The cases in 3 *Md. Ch. Dec.*, 401, 4 *Gill*, 472, 1 *Sch. & Lef.*, 18, and others cited by the appellant, establish the following proposition: "That equity will not entertain an application to allow the complainant to proceed in the performance of certain acts, or the enjoyment of certain privileges, unless the *complainant is bound to the* performance of these things." But that is not this case. The equity of this bill is, that those things which the appellant contends rested in the option of the complainant, have been done; that the appellant has received the benefit of them; that they were done on the faith of the appellant's promise to reconvey,

and that therefore he is bound to perform.    The contract
is executed, the performance by the complainant is com-
plete, and equity will compel a performance, even though
there was no contract whatever between them binding
in law.    *Edwards vs. Grand Junction Railway*, 1 *Mylne &
Craig*, 650, (13 *Eng. Ch. Rep.*, 559.)     *Read vs. Long*, 4
*Yerger*, 68.    But the contract set up in the bill was bind-
ing on the complainant, he was bound to the payment of
$100 per annum, enough to discharge the annual interest
and part of the principal.

7th.  The Circuit Court had the power to substitute a new
bond or new security in lieu of the first injunction bond,
and it was its duty to have done so on the application of
the complainant, showing that George W. Grove was a
material witness for him, and that he was incompetent
only by reason of his suretyship on the injunction bond,
and this even against the consent of the defendant.    *Stim-
mel vs. Underwood*, 3 *G. & J.*, 282.    *Irwin vs. Cargell*, 8
*John.*, 407.    *Drinkwater vs. Holliday*, 11 *Alabama*, 134.

Bowie, C. J., delivered the opinion of this Court :

The appellee, the complainant below, filed his bill on
the 3rd of April 1854, against Isaac Long, the father and
testator of the appellants, for the specific performance of a
verbal contract, to reconvey certain lands then in the pos-
session of the appellee, but which had been previously con-
veyed to Long, as security or pledge for certain advances,
made by him, for an account, and for an injunction against
certain proceedings at law, by which the aappellant's testa-
tor sought to evict the appellee from said lands.    The bill
prayed an answer on oath.  The original defendant, Long,
appeared and answered under oath, without pleading or
relying on the Statute of Frauds, and making admissions,
which will be more particularly referred to hereafter.  Af-
terwards Mr. Long made his will, devising the property
in dispute to the appellants, and died; the appellants were
made parties, a general replication entered and testimony

taken under a commission. The case coming on to be heard at final hearing, exceptions were filed by the appellants to the complainant's bill, and to certain testimony of the complainant.

The points raised by the briefs of the solicitors of the respective parties, are directed to the sufficiency of the allegations of the bill, the competency of certain witnesses excepted to, and the correspondence of the proof, with the allegations of the bill, if the latter are sufficient.

Among these, the appellants insist, that the bill does not charge that the contract was reduced to writing, and does not set out with sufficient certainty, such acts of part performance as will take the case out of the Statute of Frauds; that the contract admitted by the answer is not the same as that described in the bill; and that the allegations as to payments and services rendered, &c., are defective and insufficient, for want of certainty as to the amount, when paid and how paid. These objections require us to ascertain, *in limine,* whether there is a material variance between the agreement set forth in the bill, and that admitted in the answer. If the agreement is substantially the same, the absence of a written memorandum and the sufficiency of the evidence to sustain the allegations, are immaterial, admissions supersede the necessity of proof.

The Statute of Frauds does not forbid the specific performance of parol contracts as to real estate, where the defendant admits the agreement, and does not rely on the statute as a bar. *"Quisque renuntiare potest juri pro se introducto."* 2 *Story's Eq. Jur.,* 755. *Winn & Ross, vs. Albert & Wife,* 2 *Md. Ch. Dec.,* 169. 1 *H. & J.,* 209.

It then only remains to determine whether the contract alleged and admitted, is so certain, reasonable and equitable, as to entitle the appellees to the aid of a Court of Equity, in enforcing its specific performance.

In *Smoot & others vs. Rea & Andrews,* 19 *Md. Rep.,* 405, it was held to be "well settled, that the specific execution of a contract in equity, is a matter not of absolute right but of

sound discretion in the Court." 2 *Story's Eq.*, secs. 742, 769. "Yet, where a contract respecting real property is in its nature and circumstances unobjectionable, it is a matter of course for Courts of Equity to decree a specific performance of it, as it is for Courts of law to give damages for a breach of it. And, in general, it may be stated that Courts of Equity will decree a specific performance where the contract is in writing, and is certain and is fair in all its parts, and is for an adequate consideration, and is capable of being performed."

The bill in this case, after setting forth the agreement, charges also specific acts of part performance. These are, mainly, the execution of the deed on the part of the trustees, and the complainant and wife, to the appellant's testator, and the payment of specific sums of money by the complainant in pursuance of the agreement.

It must be observed here, that the complainant, Grove and wife, had an equitable interest in the land, the former had paid a part of the purchase money, and the trustees would not have been authorized without his consent, to convey the lands to the defendant Long. The sums of money paid by the complainant, were not like part payments of purchase money, which the Courts have decided, as between vendor and vendee, do not constitute part performance, because they may be recovered back at law, if the contract be vacated or annulled. These payments, if received in part of the money advanced, or as rent of the land, to be credited as interest, were successive admissions of the original agreement; they could not be recovered back by the complainant Grove, and could not be received by Long, if the agreement subsisted and was not specifically performed, without perpetrating a fraud.

A comparison of the contract, set out in the bill, with that admitted in the answer, will show the identity or diversity of the agreements referred to by the complainant, appellee, and the appellant's testator.

The bill alleges that Grove being the purchaser of cer-

tain lands in Washington County, and having paid part of the purchase money, &c., and finding himself unable to pay the balance, (for which his vendors had obtained judgments,) applied to Long for aid and relief, and that *it was agreed between them, that Long should receive the deed for the lands, pay off and satisfy the judgments, and hold the deed as his security until Grove should be able to reimburse him the amount of money he should accordingly pay for him, with all the interest thereon.* The answer admits, that the appellee purchased the land from Baker and Swearingen; that being unable to pay the purchase money and the executions then in the sheriff's hands, amounting to $1200 or $1300, he requested the respondent to pay said purchase money and executions, and take a deed for the land, with an understanding that, if the appellee should be able to repay him the full amount of principal and interest, and costs, that he would reconvey the same to him. In compliance with this arrangement and understanding, the respondent paid the said Baker and Swearingen and the said sheriff the sum of money aforesaid, and received a conveyance for the land, in which the said Grove and wife joined.

The bill charges, that it was agreed Long should pay off and satisfy *the judgments for the purchase money,* upon the payment and satisfaction of which he should receive the deed and hold it as his security, until Grove should be able to reimburse him, &c. The answer admits that judgments and executions to the amount of $1200 or $1300 were to be paid, the deed taken for the land by Long with the understanding, that if the appellee should be able to repay him the full amount, he would reconvey the same. The appellants have excepted to so much of Baker's testimony as tends to contradict or vary the terms of the deed. This does not exclude the facts proved by him, that, as one of the trustees, he sold the land for $1100 or $1200, for which Grove gave his four notes, one of which he paid in full, and $100 on another; that judgments were obtained and

execution issued for the residue, which Long told him he was to satisfy; that the statement annexed showed the amount paid to be $868.91, and that the said judgments were entered to the use of Long.

This testimony accounts for and explains the discrepancy between the bill and answer, by showing that the original purchase money was between $1100 and $1200, more than one-fourth of which was paid by the appellee, Grove, and that judgments and executions existed for the balance, the aggregate of which, with two small judgments of Baker against Grove, amounted to $868.91, the sum actually advanced by Long. The *gist* of the agreement was not the amount to be advanced, but, that a deed should be made to Long to secure the advancements, and he should reconvey to Grove upon being reimbursed. In this material feature the bill and answer agree. The substance of the agreement, which shows the primary object of the parties, is what Courts of Equity regard, and where that requires a specific performance, they will execute it, if the case be a proper one, whatever may be the character of the instrument. 2 *Story's Eq.*, sec. 715.

The substance of the contract being established by the admissions of the answer and evidence, which is above exception, the next consideration is, whether it was fair, mutual and just? These features are all clearly proved. Property which cost originally $1100 or $1200, on which improvements to the value of $1000 were subsequently erected by the appellee, was conveyed as security for a sum less than half its value, upon a promise of reconveyance, when the sum advanced should be refunded, the lender in the mean time receiving $100 per year in the form of rent. There is no want of mutuality. The lender had an absolute title in the estate with ample compensation for its use, subject to be divested by the reimbursement of the money. He is in the actual enjoyment of all the benefit contemplated to accrue from the agreement,—the investment of the money at most profitable rates. The rights of the appellee

rested in contract, to be asserted in a reasonable time or forfeited by his *laches;* the contract was in part performed on his part by the conveyance of the land, and entitled him to require a reconveyance when the conditions were complied with. *Edwards vs. Grand Junction R. Co.,* 13 *Eng. Ch. Rep.,* 559, 1 *Mylne & Craig,* 650.

The circumstances of this case bring it within the general rule and exception laid down in the case of *Bank of Westminster vs. Whyte,* 1 *Md. Ch. Dec.,* 539: "That no matter how absolute a conveyance may be on its face, if the intention is to take a security for a subsisting debt or for money lent, the transaction will be regarded as a mortgage, and will be treated as such." *Hicks vs. Hicks,* 5 *G. & J.,* 75. *Dougherty vs. McColgan,* 6 *G. & J.,* 275. "And although the defeasance was by an agreement resting in parol, still, as between the parties, the deed, though absolute on its face, will be considered a mortgage, for parol evidence is admissible to show that an absolute conveyance was intended as a mortgage, and that the defeasance was omitted or destroyed by fraud or mistake. But it is likewise undeniably true, that unless accident, fraud or mistake can be shown, or in cases of trusts, parol evidence cannot either at law or in equity be admitted to contradict, add to or vary the terms of a will, deed or other instrument. "In this case the transfer of the three stalls is absolute and unconditional, and *if there was nothing in the answer of Mr. Fisher to whom the* transfers were made and who acted as the agent of the bank in the negotiation with Suter, from which it could be fairly inferred that the object was to take security for money loaned or to be loaned, it would fall within the general rule, and the transfer could not be qualified by the introduction of parol evidence, neither fraud nor mistake being alleged. But looking to the pleadings in the cause, and especially to the answer of Fisher; * * * it therefore clearly appears, that the transfer was taken as a security for a debt, * * * and consequently the transaction must be treated

accordingly; that is, the transfer must be regarded as a mortgage or pledge to secure the payment of a debt, and not as passing the absolute title to the creditor.''

There is a striking analogy between the answer and facts referred to in the case cited, and that now under consideration. The same general rules have been reaffirmed in prior and subsequent cases. *Vide Ing vs. Brown & Branan*, 3 *Md. Ch. Dec.*, 522. *Dougherty vs. McColgan*, 6 *G. & J.*, 275. In *Ing vs. Brown*, the Chancellor says, "it being admitted in the answer of Brauner that his purpose in taking the bill of sale, &c., was to obtain a security 'for money loaned and to be loaned the grantor, I am of opinion that though the instrument is absolute on its face, it must be considered as a mortgage." 3 *Md. Ch. Dec.*, 522.

The language of the Court in *Dougherty vs. McColgan*, 6 *G. & J.*, 275, is an apposite answer to the argument on the part of the appellants, "that the transaction was an absolute sale, reserving the right simply in parol to Grove, if he should be able by paying and fully reimbursing Long, the money advanced, with interest, to have the land conveyed to him, thus making it a conditional sale between Long and Grove, though the holders of the title were not parties to it;" viz: "It is sometimes exceedingly difficult to draw the line between a mortgage and a conditional sale, to determine whether the purpose of the parties was to treat as a purchase, at a price agreed upon, or whether the object of the transaction was a security for the payment of a pre-existing debt, or the repayment of money advanced or lent, &c. * * * But *a transaction, constituting a mortgage, cannot be converted into a sale*, and lenders of money being less under the pressure of circumstances calculated to control the free exercise of the judgment than borrowers, they may often be tempted to avail themselves of that advantage, in order to attain unequitable bargains.''—"The leaning of Courts of Equity, therefore, is against them, and doubtful cases have generally been decided to be mortga-

Artz & Wife, *vs.* Grove.

ges." \* \* \* "Whenever the intention is like a security for a subsisting debt or for money lent, and to avoid or restrict the equity of redemption, chancery, seeking to protect the debtor against the rapacity of the creditor, and to do full and equal justice between the parties, will defeat such intention by treating the transaction as a mortgage, and extending to the debtor the benefit of the equity of redemption, and compelling the creditor to accept the principal and interest of his debt, which is all that he is in justice entitled to, or ought to seek to attain." 6 *G. & J.*, 280, 281.

The relation of mortgagor and mortgagee being thus established between the appellee and appellants, it followed as a necessary consequence, that an account should be taken between them, and the property should be reconveyed upon payment of the balance ascertained to be due. The evidence seems to us sufficient to charge the appellant's testator with the several items carried to the credit of Grove, except the item of $68, which depends on the testimony of George W. Grove, who is excepted to as an incompetent witness. We are not satisfied of the authority of the Court to discharge a surety on an injunction or appeal bond and substitute another, so as to make the former a competent witness. Such a power may be very convenient, but it impairs the obligation of contracts, and violates our organic law. The account must therefore be reformed, so far as to exclude that credit.

*Cause remanded for further proceedings.*

(Decided June 1st, 1864.)